

# IN THE
# TENTH COURT OF APPEALS

## No. 10-19-00280-CR

**BILLY JOE KING,**

                                                 **Appellant**

 v.

**THE STATE OF TEXAS,**

                                                 **Appellee**

---

### From the 54th District Court
### McLennan County, Texas
### Trial Court No. 2017-2129-C2

---

## MEMORANDUM OPINION

---

Billy Joe King was convicted of two counts of Continuous Sexual Abuse of a Young Child and was sentenced to 99 years in prison for each count. *See* TEX. PENAL CODE § 21.02. Because the evidence was sufficient to support the conviction as to Count II, the trial court did not abuse its discretion in refusing to submit a limiting instruction or in admitting hearsay evidence, and this Court will not conduct a factual sufficiency of the evidence review, King's convictions are affirmed.

BACKGROUND

King was the biological parent of M.K. and the stepparent of J.B. The family initially lived in Waco but moved to Marlin in 2004. They returned to Waco in 2016. A report of sexual abuse of M.K. and J.B. was referred to the police in August of 2017. After forensic interviews with, and medical exams of, the children, King was indicted for two counts of Continuous Sexual Abuse of a Young Child: Count I involving M.K. and Count II involving J.B.

SUFFICIENCY OF THE EVIDENCE

King first challenges the sufficiency of the evidence to support his conviction as to Count II. Specifically, he contends:

1. the evidence is insufficient to prove King is J.B.'s parent and insufficient to prove more than one instance of sexual contact; and

2. the evidence is insufficient to prove King committed an offense against J.B. in McLennan County.

The Court of Criminal Appeals has expressed our standard of review of sufficiency issues as follows:

When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at

232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

Section 21.02 of the Texas Penal Code defines the offense of continuous sexual abuse of a young child and requires, among other things, the State to prove the accused committed "two or more acts of sexual abuse." TEX. PEN. CODE § 21.02(b)(1). Count II of the indictment alleged that, in McLennan County, King committed the following multiple acts of sexual abuse against J.B.:

intentionally or knowingly cause[d] the anus of JOHN DOE, a pseudonym, a child who at the time was younger than fourteen (14) years of age, to contact the sexual organ of the Defendant,

AND/OR

intentionally and knowingly consent[ed] to the participation by JOHN DOE, a pseudonym, a child who was then and there younger than fourteen (14) years of age, to participate in a sexual performance, to-wit: sexual conduct with JANE DOE, a pseudonym, and the Defendant was then and there the parent of the child.

Based on the indictment, the State was required to prove King engaged in sexual contact with J.B.'s anus on two or more occasions and/or, as J.B.'s parent, consented to J.B.'s participation in a sexual performance with M.K.

*Multiple Acts of Abuse*

King argues in his first issue that the evidence establishes King is not J.B.'s parent, thus, sexual performance as alleged could not serve as a predicate offense for continuous sexual abuse. In the alternative, King argues the evidence established that only one instance of sexual contact with J.B.'s anus occurred, thus, it is insufficient to establish that King committed two or more acts of sexual abuse against J.B.

We begin with King's alternative argument because, regardless of whether or not the State proved King was J.B.'s parent, evidence that is sufficient to establish two or more acts of sexual abuse against J.B. would support King's conviction under Count II. Under this argument, King asserts that J.B. told Dr. Battle, the doctor who performed a forensic medical examination after the allegations of sexual abuse were discovered and J.B. was removed from his home, that King put his penis in J.B.'s anus only one time. Although King acknowledges that on direct examination, J.B. "seemed to indicate" that this

particular act of abuse occurred more than one time, King relies solely on J.B.'s statement to Dr. Battle to support his argument that the evidence is insufficient to prove two or more acts of abuse. We disagree with King's assessment of the evidence.

J. B. was 14 years old at the time of his medical examination and 16 at the time of trial. On direct examination, J.B. testified that King's penis contacted J.B.'s anus more than one time. He affirmed that statement twice. However, on cross-examination, he agreed with King's attorney that it happened only one time. He had also told Dr. Battle that it only happened one time and had told Kerry Burkley, the program director for the Children's Advocacy Center, that King had never touched J.B.'s body. But the jury also heard Dr. Battle testify about J.B.'s reluctance to disclose other instances of sexual abuse during the medical examination which left Dr. Battle with a sense that J.B. wasn't telling her everything. Further, the jury heard from Dr. Carter, a forensic psychologist, who testified that research showed boys tended to be more humiliated than girls when the offender was the same sex.

The jury heard conflicting testimony regarding the number of times that King's penis contacted J.B.'s anus. But as our standard of review requires, we presume that the factfinder resolved any conflicting evidence in favor of the verdict, and we defer to that resolution because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *See Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018). Further, the jury can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.

Crim. App. 1991). Thus, we presume the jury resolved the conflicts in J.B.'s testimony in favor of the verdict and we defer to that determination.

Accordingly, the evidence is sufficient to show that at least two instances of sexual abuse were committed by King against J.B. King's first issue is overruled.

*Acts not in McLennan County*

Count II of the indictment alleges that King committed continuous sexual abuse against J.B. in McLennan County. King contends in his second issue that the evidence is insufficient to prove sexual abuse as alleged because the only instance of sexual contact with J.B.'s anus occurred in Falls County.

The allegation in an indictment that the offense was committed in a specific county is a venue allegation, and the State may always allege that the offense was committed in the county where the prosecution is carried on. *See* TEX. CODE CRIM. PROC. art. 13.17; *Meraz v. State*, 415 S.W.3d 502, 506 (Tex. App.—San Antonio 2013, pet. ref'd). Venue is not an essential element of the offense charged, need not be proven beyond a reasonable doubt, and the State's failure to prove venue does not negate the guilt of the accused. *Meraz v. State*, 415 S.W.3d at 506.

But King contends his second issue is not a challenge to venue. Instead, King argues that because the indictment did not allege conduct occurred in Falls County, he was not provided notice of the offenses against him; and thus, because the evidence only established that King had sexual contact with J.B.'s anus in Falls County, not McLennan County, the evidence is insufficient to support King's conviction under Count II.

King relies on *Parr v. State*, 299 S.W.2d 940, 941 (1957) for this proposition, arguing that, even in prosecutions for continuous sexual abuse of a child, if the State intends to rely on a special venue provision authorizing prosecution in one county for an offense committed in another county, the indictment must allege "that the offense was committed in one county and the prosecution conducted in another." *Id*. If not, his argument continues, the indictment has not fairly informed the defendant of the offense(s) against which he must defend.

This part of King's complaint is about a defect in the indictment, and he has waived this complaint because he did not object at trial. TEX. CODE CRIM. PROC. art. 1.14(b) ("If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding."); *see also Teal v. State*, 230 S.W.3d 172, 182 (Tex. Crim. App. 2007).

As noted earlier, in a challenge to the legal sufficiency of the evidence, we consider the entire record in the light most favorable to the verdict to determine whether any rational trier of fact could have found the defendant guilty of all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009). The "essential elements" of the offense are defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge is one that accurately sets out the law, is authorized by the indictment,

does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the offense for which the defendant was tried. *Id.*

The location of the predicate sexual acts is not an element of this offense, and the statute does not require all elements of the offense to be committed in one county. *See* TEX. PENAL CODE § 21.02(b); *Hinojosa v. State*, 555 S.W.3d 262, 267 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd); *Meraz*, 415 S.W.3d at 505. Thus, a jury may consider evidence of acts of sexual abuse that occur in counties outside the county in which the indictment alleged the offense was committed. *See Hinojosa v. State*, 555 S.W.3d at 267-268 (acts of sexual abuse in another county considered for sufficiency review); *Meraz*, 415 S.W.3d at 506 (same).

Since location is not an essential element of the offense and King has not, in this issue, challenged the sufficiency of the evidence to support any of the essential elements of the offense for which he was convicted, King's second issue is overruled.

**LIMITING INSTRUCTION**

In his third issue, King contends the trial court erred in refusing to submit his proposed limiting instruction for alleged extraneous conduct committed in Falls County. Specifically, King contends that because the indictment alleged the offense was committed in McLennan County, any reference to conduct committed in Falls County was extraneous offense conduct and subject to a limiting instruction. We disagree with King.

An extraneous offense is any act of misconduct, whether resulting in prosecution or not, that is not shown in the charging papers. *Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003) (*citing Rankin v. State*, 953 S.W.2d 740, 741 (Tex. Crim. App. 1996)). A defendant is entitled to limiting instructions on the use of extraneous offenses during the guilt phase of the trial only if he timely and properly requests those instructions when the evidence is first introduced. *See* TEX. R. EVID. 105; *Delgado v. State*, 235 S.W.3d 244, 253 (Tex. Crim. App. 2007); *Hammock v. State*, 46 S.W.3d 889, 894 (Tex. Crim. App. 2001); *accord Rankin v. State*, 974 S.W.2d 707, 713 (Tex. Crim. App. 1996) (op. on orig. submission).

The indictment alleged four different acts of sexual abuse in Count I and two different acts of sexual abuse in Count II of the indictment. The State asserted in a pretrial hearing that it was not going to elicit conduct outside the conduct alleged in the indictment. During the hearing, King requested the trial court give the following limiting instruction prior to the testimony of each child victim:

> Members of the jury, during the following testimony, you may hear evidence that the Defendant committed acts of sexual misconduct or misconduct involving an assault committed against a witness who is one of the complainants named in the indictment and that such misconduct occurred outside of McLennan County, Texas.
>
> I instruct you that you cannot consider such testimony for any purpose, unless you find and believe beyond a reasonable doubt that the Defendant committed such misconduct, if any, and even then you may consider such evidence only for the limited purpose of showing the character, if any, of the Defendant and acts, if any, performed in conformity with the character of the Defendant.
>
> I further instruct you that you may not consider such evidence, if any, as evidence of guilt for the offenses charged in the indictment.

The trial court declined to give this instruction because the instruction excluded conduct outside of McLennan County which was part of the charging instrument and the case in chief.[1]

Section 21.02 of the Texas Penal Code, the continuous sexual abuse statute, creates a single offense. *Render v. State*, 316 S.W.3d 846, 857 (Tex. App.—Dallas 2010, pet. ref'd). It "allows the State to seek one conviction for a series of acts of sexual abuse with evidence that, during the relevant time period, the offender committed two or more different acts defined by section 21.02 as means of committing a single criminal offense." *Meraz v. State*, 415 S.W.3d 502, 505-06 (Tex. App.—San Antonio 2013, pet. ref'd) (internal quotations and citations omitted). As noted in Issue Two, the location of the sexual acts is not an element of the offense, and the statute does not require all elements of the offense to be committed in one county. *See* Tex. Penal Code § 21.02(b); *Hinojosa v. State*, 555 S.W.3d 262, 267 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd); *Meraz*, 415 S.W.3d at 505. Thus, a jury may consider evidence of acts of sexual abuse that occur in counties outside the county in which the indictment alleged the offense was committed. *See Hinojosa v. State*, 555 S.W.3d at 267-268 (acts of sexual abuse in another county considered for sufficiency review);

---

[1] Because the State could not guarantee that the child victims would not spontaneously discuss conduct not contained in the indictment, the trial court gave a standard extraneous offense limiting instruction:

> You are instructed that if there is any testimony before you in this case regarding the Defendant having committed any offenses, if any, other than the offenses alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the Defendant committed such other offenses, if any were committed, and even then you may only consider the same for its bearing on relevant matters, including the character of the Defendant and acts performed in conformity with the character of the Defendant.

*Meraz*, 415 S.W.3d at 506 (same).

Because there is no prohibition to the jury's consideration of specific acts of sexual abuse occurring in different counties in order to convict a defendant for continuous sexual abuse of a young child, the specific acts of sexual abuse which may have occurred in Falls County are not extraneous offenses. Thus, King was not entitled to the limiting instruction he requested, and the trial court did not err in refusing to so instruct the jury.

King's third issue is overruled.

**HEARSAY**

In his fourth issue, King asserts that the trial court abused its discretion by admitting hearsay evidence from Dr. Soo Battle, a pediatrician and medical adviser and child sexual abuse examiner at the Advocacy Center. Specifically, King asserts M.K.'s and J.B.'s medical records from an examination conducted pursuant to allegations of sexual abuse, which contained detailed statements regarding the alleged perpetrator and the acts of abuse, were improperly admitted because they did not qualify as statements for medical diagnosis and treatment.[2] We disagree with King.

We review the trial court's decision to admit or exclude evidence for an abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82-83 (Tex. Crim. App. 2016). The trial court abuses its discretion when its decision falls outside the zone of reasonable disagreement. *Id.* at 83.

---

[2] To the extent King also complains about the testimony regarding the statements made during the medical examination, that complaint is not preserved for our review. *See* TEX. R. APP. P. 33.1. King only objected to the introduction of the medical records: "…Your Honor. We would like to have a hearing on the admissibility of the medical reports that were prepared by Dr. Battle."

Rule 803(4) provides an exception for statements made for medical diagnosis or treatment, regardless of whether the declarant is available to testify. TEX. R. EVID. 803(4). Statements fall under that exception if they are made for, and are reasonably pertinent to, medical diagnosis or treatment, and if they describe medical history, past or present symptoms, their inception, or their general cause. *Id*. For statements to be admissible under Rule 803(4), the proponent of the evidence must show that (1) the declarant was aware that the statements were made for the purposes of medical diagnosis or treatment and that proper diagnosis or treatment depended on the veracity of the statement and (2) the particular statement offered is also "pertinent to treatment;" that is, it was reasonable for the health care provider to rely on the particular information in treating the declarant. *See Taylor v. State*, 268 S.W.3d 571, 589, 591 (Tex. Crim. App. 2008); *Prieto v. State*, 337 S.W.3d 918, 921 (Tex. App.—Amarillo 2011, pet. ref'd); *Mbugua v. State*, 312 S.W.3d 657, 670-71 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).[3]

Here, Dr. Battle testified outside the presence of the jury that medical exams are performed with allegations of sexual contact or penetration, even if it is months or years after the abuse occurred. That decision is made in consultation with the police

---

[3] Relying on *Garcia v. State*, 126 S.W.3d 921 (Tex. Crim. App. 2004), King contends an extra element is necessary: that the child declarant must be the one seeking diagnosis or treatment, and that in this case, neither M.K. nor J.B. sought out the examinations; the police did. Thus, his argument continues, the statements should have been excluded. We disagree with King. In *Garcia*, the State was attempting to introduce a hearsay statement made by an adult victim to a women's shelter employee as an exception under Rule 803(4). *See Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004). The victim did not go to the shelter or make her statement for the purpose of medical diagnosis, and it was excluded. Even if this extra element is required, the factual scenario in *Garcia* is not similar to this case. Here, M.K. and J.B. did not go to the advocacy center for any reason other than for the purpose of medical diagnosis. Simply because the police department, CPS, and Dr. Battle made the decision to conduct the examinations does not mean, as King argues, that the children were not seeking a medical diagnosis.

department, CPS, and Dr. Battle. In those kind of cases, a medical exam would probably be performed at the Advocacy Center.

Dr. Battle performed medical examinations on M.K. and J.B. at the Advocacy Center on September 18, 2017, which was less than a month after the children were removed from the home and a little over two months after the last incidents of abuse. Routinely, as a part of the examination, a medical history is taken which typically involves discussion of the allegations. Dr. Battle does not review reports of the alleged abuse before she performs the medical exam. Based on what the child tells her about the abuse during the medical history, Dr. Battle looks for specific things during the examination. What she is told by the child directs her diagnosis or treatment of the child.

Before the jury, Dr. Battle testified that when the child and parent or guardian first arrive, they fill out a medical history questionnaire. After she explains the process of the exam, she talks to the child by themselves about their history, medical concerns, and why they are there. When starting to obtain the medical history from M.K., Dr. Battle said she explained the importance of being truthful, and M.K. demonstrated that she understood the difference between truth and a lie. Dr. Battle also explained that her questions would be for the purposes of medical evaluation and treatment and to make sure that M.K.'s body was healthy. Dr. Battle agreed that she went through the same steps with J.B. and his examination as she did with the examination of M.K. and that J.B. said he would tell the truth.

Based on this testimony, the trial court could have found that M.K. and J.B. were aware their statements were made for the purposes of medical diagnosis or treatment

and that proper diagnosis or treatment depended on the veracity of those statements and it was also reasonable for Dr. Battle to rely on the particular information in treating the children. Accordingly, the trial court did not abuse its discretion in admitting the records over King's hearsay objection, and King's fourth issue is overruled.

FACTUAL SUFFICIENCY

In his fifth issue, King contends this Court should reinstate a factual sufficiency review and find that the evidence was factually insufficient to support his conviction. The Texas Court of Criminal Appeals, in *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010), abandoned the factual-sufficiency standard of review in criminal cases. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Although *Brooks* was a plurality opinion, the Court of Criminal Appeals has consistently recognized that it abolished a factual sufficiency review in criminal convictions. *See Butcher v. State*, 454 S.W.3d 13, 20 (Tex. Crim. App. 2015) ("Affirmative defenses may be evaluated for legal and factual sufficiency, even after this Court handed down its opinion in *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010), *which abolished factual-sufficiency review* as it applies to criminal convictions.") (emphasis added); *Martinez v. State*, 327 S.W.3d 727, 730 (Tex. Crim. App. 2010) ("[A]ppellant's factual-sufficiency point of error is ultimately premised on our decision in *Clewis v. State*,…, in which we established "the proper standard of review for factual sufficiency of the elements of the offense," and *we overruled Clewis in Brooks v. State*,….") (emphasis added). Further, this Court has previously considered and rejected arguments such as those presented by King. *See e.g. Steggall v. State*, No. 10-17-00017-CR, 2018 Tex. App. LEXIS 6228, at *1-2 (Tex. App.—Waco Aug. 8, 2018, pet. ref'd)

(not designated for publication); *Wilkins v. State*, No. 10-16-00233-CR, 2018 Tex. App. LEXIS 1575 at *8 (Tex. App.—Waco Feb. 28, 2018, pet. ref'd) (not designated for publication).  We are not persuaded to resurrect a factual sufficiency review of the evidence in this proceeding.   King's fifth issue is overruled.

CONCLUSION

Having overruled each issue raised by King on appeal, we affirm the trial court's judgments.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
        Justice Neill, and
        Justice Scoggins[4]
Affirmed
Opinion delivered and filed April 21, 2021
Do not publish
[CRPM]



---

[4] The Honorable Al Scoggins, Senior Justice of the Tenth Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court.  *See* TEX. GOV'T CODE §§ 74.003, 75.002, 75.003.